UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| NIKOL KRISTIN CHOLAJ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. C09-1664-RAJ-BAT |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Nikol Kristin Cholaj seeks judicial review of the denial of her application for

Social Security Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB")

by the Commissioner of the Social Security Administration, after a hearing before an

administrative law judge ("ALJ").  Dkt. 3.  Cholaj contends the ALJ erred by (1) failing to

consider her obesity, (2) finding she could perform the full range of light work, (3) finding bipolar

disorder and degenerative disc disease were not medically determinable impairments, (4) finding

her mental health impairments do not render her disabled, (5) failing to properly weigh the

opinion of a treating physician, (6) failing to ask the vocational expert whether his opinion was in

accord with the Dictionary of Occupational Titles, and (7) making findings that are not supported

by substantial evidence.  Tr. 16.

REPORT AND RECOMMENDATION – 1

1   For the reasons below, the Court recommends the Commissioner's decision be

2   **REVERSED** and **REMANDED** for an award of benefits.

3   ## I.  FACTUAL AND PROCEDURAL HISTORY

4   Nikol K. Cholaj is currently 39 years old, has a high school education (Tr. 24), and past

5   work experience as a driver/lab runner, house cleaner, cashier, barista, and babysitter.  Tr. 159.

6   On November 2, 2006, she applied for DIB alleging disability as of July 31, 2006.  Tr. 136.  She

7   also applied for SSI on November 9, 2006, alleging the same onset date. Tr. 142.  Her

8   applications were denied initially and on reconsideration.  Tr. 75, 79, and 84.  The ALJ held a

9   hearing on June 24, 2009, and issued a decision on August 24, 2009, finding Cholaj not disabled

10  through the date of the decision.  Tr. 25.  The Appeals Council denied Cholaj's request for

11  review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1.

12  ## II.  THE ALJ'S DECISION

13  Applying the five-step sequential evaluation process for determining whether a claimant

14  is disabled,[1] the ALJ found Cholaj had not engaged in substantial gainful activity since the

15  alleged onset date.  Tr. 11.

16  At step two, the ALJ found Cholaj had the following severe impairments:  status post

17  right/left Meniscectomy, obesity, depression, and anxiety disorder.  *Id*.

18  At step three, the ALJ found Cholaj's impairments did not meet or equal the requirements

19  of a listed impairment.[2]  Tr. 13.

20  Before proceeding to step four, the ALJ found Cholaj had the residual functional capacity

21  ("RFC") to perform light work as follows:  frequently lift and/or carry ten pounds, occasionally

22  lift and /or carry twenty pound, stand/walk approximately six hours out of an eight hour

23  [1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

1  workday, and sit for approximately six hours out of an eight hour workday.  Cholaj is limited to

2  occasional postural limitations including climbing, balancing, stooping, kneeling, crouching, and

3  crawling.  She must avoid exposure to vibrations.  She is limited to simple, repetitive tasks, and

4  can have only occasional contact with the public and coworkers.  Tr. 15.

5          At step four, the ALJ found Cholaj could not perform her past work.  Tr. 24.

6          And at step five, the ALJ found, considering Cholaj's age, education, work experience,

7  and RFC, there are jobs that exist in significant numbers in the national economy that she can

8  perform and that Cholaj was thus not under disability from July 31, 2006, through the date of the

9  decision.  Tr. 24.

10                          **III.  STANDARD OF REVIEW**

11          This Court may set aside the Commissioner's denial of disability benefits when the ALJ's

12  findings are based on legal error or not supported by substantial evidence.  42 U.S.C. § 405(g);

13  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  The ALJ determines credibility and

14  resolves conflicts and ambiguities in the evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

15  Cir. 1995).  The Court may neither reweigh the evidence nor substitute its judgment for that of

16  the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence

17  is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

18  must be upheld.  *Id.*

19                              **III.  DISCUSSION**

20  **A.      Obesity**

21          At step two, the ALJ found Cholaj's obesity to be a severe impairment.  Tr. 11.  Cholaj

22  argues the ALJ erred by failing to explain whether her obesity in combination with other

23  impairments met a listing and the impact of her obesity on her RFC.  Tr. 16 at 4.  The fact that a

REPORT AND RECOMMENDATION – 3

1    claimant is obese does not by itself require the ALJ to assess the effects of obesity in

2    combination with other impairments. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

3    Analyzing obesity in combination with other impairments is not required where, for example, the

4    record does not indicate that obesity exacerbates the claimant's other impairments, or the

5    claimant is represented by counsel who fails to help develop the record. *Id.* at 682, 683.

6        Here, Cholaj, who is represented by counsel, cites no evidence showing her obesity could

7    be a partial basis for disability.  She argues the record shows she has significant difficulty

8    completing basic household tasks and taking care of herself. Tr. 16 at 4.  But this evidence is

9    based on a mental health evaluation that noted Cholaj lacked interest in hygiene and social

10   activities.  *Id.*  While this might evidence mental health problems, it does not show obesity is a

11   partial basis for disability.  Additionally, Cholaj points to nothing in the record suggesting that

12   her obesity exacerbated her other impairments to a degree greater than the ALJ's residual

13   functional capacity finding.

14       Cholaj bears the burden of showing her impairments or combination of impairments

15   render her disabled.  As she has failed to do so, the Court finds the ALJ did not error in

16   addressing Cholaj's obesity.

17       **B.      Cholaj's Ability to Perform Light Work**

18       Cholaj contends[3] substantial evidence does not support the ALJ's finding that Cholaj has

19   the ability to stand or walk for six hours  out of an eight hour workday. Dkt. 16 at 4, 6 and 15.

20   The Court disagrees.  "Substantial evidence" is more than a scintilla but less than a

21   preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

22   
23   [3]  Cholaj raises this argument in both issue 2, "The ALJ Erred in Finding that the Plaintiff could
     perform the full range of light work" and issue 7a,  "The ALJ's findings are not supported by
     substantial evidence,"  "physical impairments."  Tr. 4, 15.

REPORT AND RECOMMENDATION – 4

1    support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*,

2    881 F.2d 747, 750 (9th Cir. 1989).  To determine whether substantial evidence supports the

3    ALJ's decision, the Court reviews the administrative record as a whole, weighing both the

4    evidence that supports and detracts from the ALJ's conclusion.  *Id.*  Where the evidence is

5    susceptible to more than one rational interpretation the Court must uphold the ALJ's decision.

6    *Id.*

7           Here, the ALJ's RFC determination is supported by substantial evidence.  The decision

8    below shows the ALJ considered all of the medical evidence including the opinions of Dr.

9    Robert Winegar, M.D., Dr. Melvin Levine, M.D., Dr. J. Chriss Cancro, M.D., Dr. Anna Wong,

10   M.D., Dr. David Bishop, M.D., and Dr. Robert Sargent, M.D.  Tr. 15-22.  This evidence shows

11   Cholaj's knee surgery has resulted in postural limitations but that Cholaj has good range of

12   movement, walks without a limp, and has few limitations to standing and walking.  Tr. 20-22.

13          In the Court's view, there is substantial evidence to support the ALJ's finding that Cholaj

14   has the physical ability to perform simple, repetitive light work with postural limitations of

15   climbing, balancing, stooping, kneeling, crouching and crawling.  Tr. 15.  Additionally, the

16   Court finds no support for Cholaj's contention that there is substantial evidence she is physically

17   incapable of gainful activity and that she should be found disabled.  Even Doctors Sargent and

18   Cancro, who opine Cholaj cannot perform light work, did not conclude she is disabled; rather,

19   they both believe she can perform sedentary work.  Tr. 21.

20          **C.      The  ALJ's Step-Two Analysis of Bipolar Disorder and Degenerative Disc
                      Disease**

21
22          Cholaj argues the ALJ erred in finding at step-two that Cholaj did not establish bipolar

     disorder and degenerative disc disease as medically determinable impairments.  Dkt. 16 at 6.  At

23   step-two of the sequential disability analysis, the ALJ must determine whether a claimant has a

REPORT AND RECOMMENDATION – 5

1  "severe medically determinable physical or mental impairment … or combination of

2  impairments."  20 CFR § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

3  An impairment is medically determinable if it results from anatomical, physiological, or

4  psychological abnormalities that can be shown by medically acceptable clinical and laboratory

5  diagnostic techniques.  20 C.F.R. § 404.1508.

6        To be medically determinable, a physical or mental impairment must be established by

7  medical evidence consisting of signs, symptoms, and laboratory findings.  20 CFR § 404.1520(c).

8  Signs are anatomical, physiological, or psychological abnormalities that can be observed, apart

9  from the claimant's statements; signs must be shown by observable facts that can be medically

10  described and evaluated.  20 C.F.R. § 404.1528(b).  Symptoms are the claimant's own descriptions

11  of his physical or mental impairment.  20 C.F.R. § 404.1528(a).  However, a claimant's statement

12  of symptoms alone is not enough to establish a physical or mental impairment.  20 C.F.R.

13  § 404.1508, 404.1528(a).  A claimant bears the burden of showing that she has a medically

14  determinable severe impairment or combination of impairments prior to her date last insured.  *See*

15  20 C.F.R. § 404.1520(a)(4)(ii).

16        *1.*    *Degenerative Disc Disease*

17        Although Cholaj's medical records note degenerative disc disease, there is no medical

18  evidence establishing the impairment.  Dr. Robert Sargent, M.D., noted Cholaj had degenerative

19  disc disease.  Tr. 301, 330.  However, Dr. Sargent's records do not indicate upon what he based

20  this diagnosis.  Although he ordered an MRI of Cholaj's left knee (TR. 318) he did not order an

21  x-ray or MRI of Cholaj's back.  His records also contain no discussion about degenerative disc

22  disease, exactly what signs or symptoms supported a finding of the impairment and what

23  treatment he provided for this condition.

REPORT AND RECOMMENDATION – 6

Dr. Andrew Wilner, M.D., also treated Cholaj.  He noted once, in June 2008, that Cholaj had degenerative disc disease.  Tr. 694.  However, his other treatment records do not repeat this diagnosis.  Rather, his records between March and November 2008 indicate Cholaj had degenerative arthritis in the knee, pain secondary to an accident, degenerative arthritis and left sciatica with L5 finding. Tr. 691-695.  Dr. Wilner's records also do not indicate upon what he based his statement that Cholaj has degenerative disc disease.  He did not order an x-ray or MRI of Cholaj's back and the only orthopedic consultation he sought was for Cholaj's knee problems. Tr. 686.  While he indicates Cholaj has back problems, there is no discussion about what signs or symptoms support a finding that Cholaj has degenerative disc disease.

Cholaj was also examined by Dr. Anna Wong, M.D., regarding numbness in her left leg. Dr. Wong did not mention or find Cholaj suffered from degenerative disc disease.  Tr. 650.

The ALJ's conclusion that there are no objective tests that confirm the diagnosis of degenerative disc disease is thus supported by the record.  Cholaj argues the ALJ erred because objective testing is not necessary to medically determine an impairment.  However, to be medically determinable, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  20 CFR § 404.1520(c).  Hence, an ALJ may reject a treating physician's opinion that is unsupported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  As such, it is not enough that two doctors noted Cholaj had degenerative disc disease.  A diagnosis alone is not enough to establish the existence of an impairment.  There must be some medical evidence supporting the diagnosis and the record shows that such evidence is lacking.  Therefore, the  Court will not disturb the ALJ's finding regarding degenerative disc disease.

REPORT AND RECOMMENDATION – 7

1    2.      *Bipolar Disorder*

2    The Court will also not disturb the ALJ's finding that Cholaj does not suffer from bipolar

3    disorder.  Cholaj was diagnosed with bipolar disorder by Valley Medical Center in 1999 and by

4    Dr. Sargent and Seattle Mental Health in 2006.  Tr. 233, 302, 331.  Relying on the opinions of

5    psychiatrists Dr. Shamim Nejad, M.D., and Andy J. Sands, M.D., the ALJ found Cholaj did not

6    suffer from bipolar disorder. Tr. 13.  In 2007, Dr. Nejad opined Cholaj suffered from dysthemia

7    and panic disorder but did not meet the diagnostic criteria for bipolar disorder.  Tr. 388-89.   Dr.

8    Sands is Cholaj's treating psychiatrist.  He treated her multiple times in 2007 and 2008 and

9    opined that she suffered from depressive and anxiety disorder.  Tr. 503-606.  He specifically

10   opined that Cholaj did not suffer from bipolar disorder but suffered from category III depression,

11   anxiety and panic disorder.  Tr. 526.

12   It is the ALJ's responsibility to resolve conflicts in the medical evidence about Cholaj's

13   mental condition.  *Andrews v. Shalala*, at 1039.  As such, the Court should not reweigh the

14   evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, at 954.

15   Dr. Sands and Nejad are psychiatrists whose opinion about their area of specialty is entitled to

16   more weight than that of a doctor outside that specialty area.  20 C.F.R. § 404.1527(d)(5).   The

17   ALJ thus properly relied on the opinions of Dr. Sands and Nejad in evaluating whether Cholaj

18   has bipolar disorder.  Further, as the evidence is susceptible to more than one rational

19   interpretation, it is the Commissioner's conclusion that the Court must uphold.  *Id*.  The ALJ's

20   finding that bipolar disorder was not established is supported by substantial evidence and this

21   Court will not overturn it.

22   **D.    Mental Health Evidence**

23   Cholaj argues the ALJ erred in evaluating the medical evidence regarding her depression

REPORT AND RECOMMENDATION – 8

1   and anxiety and panic disorders.  Tr. 8, 11.  An ALJ  must consider all medical opinion evidence.

2   20 C.F.R. § 404.1527(b).  Although the ALJ is not bound by an expert medical opinion on the

3   ultimate question of disability, the ALJ must provide "specific and legitimate" reasons for

4   rejecting the opinion of a treating physician.  *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir.

5   1995).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the

6   facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings."

7   *Magallanes v. Bowen*, at 751 (9th Cir.1989).

8       Cholaj first contends Dr. Sargent and the Seattle Mental Health Center diagnosed her

9   with bipolar disorder and depression.  Dkt. 16 at 10.  However, these medical professionals did

10  not find these conditions rendered Cholaj unable to work; thus the Court concludes the ALJ did

11  not err in evaluating these opinions.

12      In February 2007, Dr. Nejad conducted a psychiatric evaluation.  Tr. 384.  Dr. Nejad

13  opined[4] that it was unlikely Cholaj would be able to perform work activities on a consistent

14  basis, that it was unlikely she would be able to maintain regular work attendance, and that it was

15  unlikely she could complete a regular workday or workweek without interruptions due to her

16  mental and physical problems.  Tr. 389.  He also opined it was likely she would have significant

17  difficulty dealing with the usual stress encountered in a competitive workplace and that he did

18  not anticipate that her symptoms would improve within the next 12 months.  *Id*. at 390.

19      The ALJ gave little weight to these opinions on the grounds that the mental status

20  examination showed Cholaj had few limitations and could perform simple repetitive tasks.  An

21  ALJ may reject an opinion of an examining physician, if contradicted by a non-examining

22  physician, as long as the ALJ gives "specific and legitimate reasons that are supported by

---

23  [4]  Dr. Nejad also opined Cholaj would have difficulties interacting with coworkers and the public, a limitation the ALJ adopted and incorporated in the RFC assessment.  Tr. 19.

REPORT AND RECOMMENDATION – 9

1   substantial evidence in the record." *Moore v. Comm'r*, 278 F.3d 920, 924 (9th Cir. 2002)

2   (citation omitted).  The reasons given by the ALJ do not meet this standard.  That Cholaj can

3   perform a simple repetitive task and has few limitations in performing tasks in a mental status

4   exam does not establish she can maintain regular work attendance, complete a regular workday

5   or would not have significant difficulties dealing with the usual workplace stresses.  Her ability,

6   for example, to follow instructions to store two files in a cabinet does not show she can store

7   files all day long, maintain regular attendance, or deal with any of the stresses that accompany

8   such a job.  As the ALJ did not indicate Dr. Nejad's opinions were contradicted by another

9   physician's opinion and did not give a clear and convincing reasons to reject the doctor's

10   opinions, the Court concludes the ALJ erred in evaluating Dr. Nejad's opinions.

11          In December 2007, Dr. Lanny Snodgrass, M.D., Ph.D., conducted a Labor and Industry

12   psychiatric evaluation.  Tr. 677-685.  Cholaj's contention that Dr. Snodgrass found she was

13   unable to work full time and could only work two to four hours a day, paints a partial picture of

14   the doctor's assessment.  Dkt. 16 at 10.  Dr. Snodgrass opined that while Cholaj, on the date of

15   examination, was limited to working no more than four hours, with treatment there was a "50

16   percent advantage for improvement and removal, therefore, of psychological barriers to [Cholaj]

17   regaining her employment or employability status."  Tr. 684.  Moreover, as the ALJ observed,

18   Dr. Snodgrass noted that according to Cholaj, she was not depressed most days.  As such, the

19   Court concludes the ALJ did not err in evaluating Dr. Snodgrass' opinion.

20          In August 2008, Dr. Linda Miller, D.O. performed an independent psychiatric evaluation

21   and concluded it is unlikely Cholaj can perform reasonably continuous work "due to her mental

22   health symptoms."  Tr. 488.  The ALJ  gave this opinion little weight on the grounds that the

23   exam was brief, did not provide evidence to support the conclusion, and because it was based on

REPORT AND RECOMMENDATION – 10

1    Cholaj's subjective reports.  An ALJ may give less weight to a doctor's opinion that is brief,

2    conclusory, and inadequately supported by medical records.  *Bayliss v. Barnhart*, 427 F.3d 1211,

3    1216 (9th Cir. 2005).  Dr. Miller did not provide much in the way of independent analysis or

4    diagnosis.  Tr. 478-88.  Dr. Miller's description of  the mental status exam findings are skimpy

5    and indicated Cholaj looked healthy and well rested, alert and oriented, goal oriented with

6    normal speech; that her affect was broad ranged, she was not suicidal or delusional, and had

7    linear thought processes, good concentration, attention and judgment.  *Id.* at 487.  The Court

8    therefore concludes the ALJ did not err in evaluating Dr. Miller's opinion.

9         In March 2009, Dr. Ronald Early, M.D., Ph.D., conducted a psychiatric evaluation in

10   which he noted that Cholaj was unable "to engage in usual interaction with co-workers and

11   others in her job situation."  Tr. 708.  The ALJ took this into account by concluding that Cholaj

12   had the RFC to perform light work but that she "can only have occasional contact with the public

13   and coworkers."  Tr. 15.  The Court thus concludes the ALJ did not err in evaluating Dr. Early's

14   opinion.

15        The ALJ also gave little weight to Dr. Sands, Cholaj's treating psychiatrist (Tr. 22), who

16   opined that it is unlikely Cholaj will be able to perform work on a reasonably consistent basis

17   because of her mental health problems.  Tr. 526.  Dr. Sands stated that he agreed with most of

18   Dr. Linda Miller's opinions but did not believe Cholaj has Bipolar Disorder.  Rather, he believed

19   Cholaj has depression, anxiety and panic disorder and fits into category III because of her (1)

20   episodic loss of self-control and risk of causing danger to self; (2) moments of morbid

21   apprehension; (3) periodic depression that disturbs sleep and eating habits, and causes loss of

22   interest in usual daily activities; and (4) fear motivated behavior causing more than mild

23   interference with daily life.  Tr. 526.

REPORT AND RECOMMENDATION – 11

1      The ALJ gave little weight to Dr. Sands' opinions indicating among other things that the

2  doctor "did not submit any supporting documentation or perform an objective examination," was

3  "evasive about the causation between claimant's mental symptoms and her injury," "stated that

4  the claimant did not have any specific psychiatric-related vocational limitations yet also he also

5  stated that her return to work date was 'unknown' which is contradictory," and " relied on

6  Cholaj's subjective complaints." Tr. 22-23.  The ALJ also stated the basis upon which the doctor

7  found Cholaj disabled was unclear and that "it is uncertain that Dr. Sand's understands the

8  qualifications of 'disability' pursuant to the Social Security Administration regulations."  *Id.* at

9  23.

10     These are not specific or legitimate reasons to reject Dr. Sands' opinions.  First, the ALJ

11 rejected Dr. Sands' opinions without pointing to any medical evidence or opinion that contradicts

12 Dr. Sands' opinion.  The Court is required, when reviewing the ALJ's decision to "consider the

13 entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting

14 evidence.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006) (quoting *Hammock v.*

15 *Bowen*, 879 F.2d 498, 501 (9th Cir.1989)).  The record as a whole does not support the ALJ's

16 decision.

17     Next, the ALJ's statement that there is no documentation or objective examination is not

18 supported by the record.  Dr. Sands' opinions are supported by extensive documentation.  He

19 treated Cholaj for at least a year, examined her regularly, completed a psychiatric evaluation for

20 Cholaj at the request of Labor and Industries, and reviewed the opinions of other mental health

21 professionals.  The medical records associated with Dr. Sands are extensive.  Tr. 496-616.  There

22 is no indication that Dr. Sands did not follow and apply the methods of diagnosis regularly

23 utilized by psychiatrists.  To the contrary, like other mental health professionals, he performed

REPORT AND RECOMMENDATION – 12

mental status examinations (TR. 601) and prescribed psychotropic medications.  He also utilized his own professional judgment about Cholaj's mental health problems as evidenced by his disagreement with the opinions of other doctors that Cholaj had bipolar disorder.

Third, much of the evidence in a patient  diagnosed with depression or anxiety disorder will frequently be based almost entirely on the patient's subjective reporting.  Hence the fact Dr. Sands' relied on statements made by Cholaj is not a basis to reject the doctor's opinions.  The ALJ implies that the doctor's opinions are unfounded and merely reflect "the claimant's viewpoint."  Tr. 23.  There is no evidence Dr. Sands was merely parroting Cholaj's views about the degree of her impairment.  Rather, when he first evaluated Cholaj in February 2007, he recognized she saw herself as "totally permanently disabled."  Tr. 607.  Rather than buying into Cholaj's viewpoint, Dr. Sands rejected it and proposed she be treated with medications and psychotherapy and that time be spent "discussing that she may have a role in the workforce and in essence is not totally, permanently disabled."  *Id.*  It was only after treating Cholaj for over a year that Dr. Sands opined in September 2008 that he agreed with Dr. Miller's assessment that Cholaj would not be able to work on a reasonably continuous basis.

Fourth, the ALJ's finding that Dr. Sands' opinion should be rejected because the doctor made a contradictory statement that Cholaj did not have any specific psychiatric-related vocational limitations but had an unknown return to work date is not supported by the record.  Tr. 22.  As the ALJ himself noted, Dr. Sands stated Cholaj "did not have any specific psychiatric related conditions that would impact vocational services," not that she no vocational limitations.  Tr. 22.

Fifth, the ALJ erred in rejecting Dr. Sands' opinion on the ground that "it is uncertain that Dr. Sands understands the qualifications of 'disability' pursuant to the Social Security Administration regulations."  *Id.* at 23.  There is no evidence that Dr. Sands did not understand

REPORT AND RECOMMENDATION – 13

1   the "qualifications of disability."  And, if the ALJ thought he needed to know more about the

2   basis of Dr. Sands' understanding about this issue, he had a duty to conduct an appropriate

3   inquiry by calling the doctor to testify or by submitting questions.  *See Smolen v. Chater*, 80 F.3d

4   1273, 1288 (9th Cir. 1996).

5         Accordingly, the Court finds the ALJ rejected Dr. Sands' opinions without giving specific

6   and legitimate reasons.

7         **E.      Whether The ALJ Properly Questioned the Vocational Expert**

8         A vocational expert ("VE") testified at the hearing the ALJ conducted.  TR. 25, 66-69.

9   Cholaj contends the ALJ erred by failing to ask the VE whether the expert's testimony was

10  consistent with the Dictionary of Occupational Titles ("DOT").  Dkt. 16 at 14.

11        An ALJ may use occupational evidence in a disability determination.  *See* SSR 00-4p.

12  Under this rule, when a VE testifies "about the requirements of a job or occupation, the

13  adjudicator has an affirmative responsibility to ask about any possible conflict between" the VE's

14  testimony and the "information provided in the DOT."  *Id.*  SSR 00-4p specifically provides that

15  the adjudicator "will ask" the VE "if the evidence he or she has provided" is consistent with the

16  DOT and "obtain a reasonable explanation for [any] apparent conflict."  *Id.*

17        The Ninth Circuit has held that SSR 00-4p mandates that an ALJ cannot rely on VE

18  testimony without inquiry into and explanation of any potential conflicts with the DOT.

19  *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007).  However, an ALJ's failure to

20  makes such an inquiry is not alone cause to reverse the ALJ's decision.  The ALJ's failure to

21  inquire is "harmless" if no conflict existed or if the VE "provides sufficient support for the ALJ's

22  conclusion so as to justify any potential conflicts."  *Id.* at 1154 n. 19.  In this case, Cholaj has

23  identified no actual inconsistency between the VE's testimony concerning the demands of the

REPORT AND RECOMMENDATION – 14

1  officer helper (DOT 239.567-010) and photocopy machine operator (DOT 207.685-014)

2  positions and the DOT and no inconsistency is apparent.

3       The Commissioner correctly notes that Cholaj bears the burden of showing that a legal

4  error was prejudicial.  Dkt. 17 at 13, *See Shinseki v. Sanders*,__U.S.__, __, 129 S. Ct. 1696, 1706

5  (2009).  As Cholaj  has not done so, the Court concludes the ALJ's failure to inquire as to any

6  possible conflicts between the VE"s testimony and the DOT constituted at most harmless error.

7       **F.**    **Remand For Benefits**

8       Cholaj asks the Court to remand this case for an award of benefits.  Dkt. 16 at 20.

9  Because the ALJ has committed reversible error, the Court has discretion to remand for further

10  proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

11  The Court may order a remand for further administrative proceedings if enhancement of the

12  record would be useful.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Or the

13  Court may remand for an award of benefits where "the record has been fully developed and

14  further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298

15  F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

16  This occurs when:

17          (1) the ALJ has failed to provide legally sufficient reasons for
        rejecting the claimant's evidence; (2) there are no outstanding

18          issues that must be resolved before a determination of disability
        can be made; and (3) it is clear from the record that the ALJ would

19          be required to find the claimant disabled if he considered the
        claimant's evidence.

20  *Id.* at 1076-77.

21       Where the Commissioner fails to provide adequate reasons for rejecting a treating

22  physician's opinion, the Court may credit that opinion as a matter of law and remand for an

23  award of benefits.  *Lester*, 81 F.3d at 834.  In this case, the ALJ rejected the opinions of Cholaj's

REPORT AND RECOMMENDATION – 15

1  treating psychiatrist and an examining psychiatrist for legally insufficient reasons.  Both

2  psychiatrists opined that Cholaj was unable to work on a continuous bases.  These opinions

3  combined with the evidence of record, establish that Cholaj is unable to perform her past relevant

4  work or engage in other substantial gainful activity available in significant numbers in the

5  national economy.

6           As Cholaj's mental health has been evaluated by numerous mental health professionals,

7  the Court concludes "the record has been fully developed and further administrative proceedings

8  would serve no useful purpose." *McCartey*, 298 F.3d at 1076.  As such, the matter should be

9  remanded with a direction for the award of benefits.

10                                         **V.  CONCLUSION**

11          For the foregoing reasons, the Court recommends that this case be REVERSED and

12 REMANDED for an award of benefits.  A proposed order accompanies this Report and

13 Recommendation.

14          DATED this 16th  day August, 2010.

15                                                     s/ BRIAN A. TSUCHIDA
                                                       United States Magistrate Judge

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION – 16